**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Benjamin Paul Hannon, Appellant,

v.

The State, Respondent.

Appellate Case No. 2022-000687

———————

Appeal From Cherokee County
R. Keith Kelly, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-206
Submitted May 1, 2025 – Filed June 25, 2025

———————

**AFFIRMED**

———————

Christopher Michael Bain, of Parker & Bain, LLC, of Gaffney, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Attorney General Mark Reynolds Farthing, both of Columbia, for Respondent.

———————

**PER CURIAM:** This case arises from traffic violations handled in the magistrate court. At the time of Benjamin Hannon's set jury trial, our supreme court's COVID-19 mask mandate was in place for all state and county courthouses. The record suggests Hannon arrived at the courthouse, refused to wear a mask, declined

a face shield as an alternative, and then left the courthouse. The magistrate conducted a bench trial in Hannon's absence, found him guilty, and instituted a fine with no jail time. Notably, our record consists only of the magistrate's return and the record developed in Hannon's appeal to the circuit court.

Hannon presents three issues: whether the circuit court erred in limiting the record to the magistrate's return; whether Hannon waived his right to be present at trial when he refused to wear a mask and left the courthouse; and whether that same instance constituted a waiver of Hannon's right to a jury trial. Because Hannon's decision to leave the courthouse after being advised that his trial would proceed in his absence and after being advised of the likely consequences of his leaving is sufficient to demonstrate waiver, we affirm.

## STANDARD OF REVIEW

"In criminal appeals from [the] magistrate . . . court, the circuit court does not conduct a *de novo* review, but instead reviews for preserved error raised to it by appropriate exception." *State v. Henderson*, 347 S.C. 455, 457, 556 S.E.2d 691, 692 (Ct. App. 2001); *see also* S.C. Code Ann. § 18-3-70 (2014) ("The appeal [from a magistrate in a criminal case] must be heard by the Court of Common Pleas upon the grounds of exceptions made and upon the papers required under this chapter, without the examination of witnesses in that court. And the court may either confirm the sentence appealed from, reverse or modify it, or grant a new trial, as to the court may seem meet and conformable to law."). "This court will review the decision of the magistrate court for errors of law only." *State v. Taylor*, 411 S.C. 294, 299–300, 768 S.E.2d 71, 74 (Ct. App. 2014).

## EVIDENCE OUTSIDE OF THE RETURN

Hannon contends the circuit court erred in not considering the alleged recording Hannon made of his encounter with the magistrate judge. We begin with this question because it shapes the scope of Hannon's remaining issues. Hannon argues that his appeal to the circuit court was his first opportunity to dispute the contents of the magistrate's return and present evidence in support of his opposing position.

This issue is likely unpreserved. Hannon's argument to this court is that the circuit court erred in limiting the record to the magistrate's return. This is not the same argument Hannon made to the circuit court. Although Hannon asked the circuit court to review the recording, when the court directly asked the parties whether its review was limited to the magistrate's return, Hannon's counsel responded

affirmatively. The circuit court's written order denying Hannon's appeal noted multiple times that the record was limited to the return. In his motion to reconsider, Hannon never argued that the circuit court erred in limiting the record to the return; he only asked for "clarification on whether [the] recording . . . was considered." *See S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301–02, 641 S.E.2d 903, 907 (2007) (providing a preserved issue must have been "(1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the trial court with sufficient specificity" (quoting Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 57 (2d ed. 2002))).

Still, even if the issue was preserved, we find no error in the circuit court's decision to not consider the recording. As our standard of review explains, on appeal from the magistrate court, the circuit court is not permitted to conduct a de novo review and must only consider the statutorily required "papers" from the magistrate. *Henderson*, 347 S.C. at 457, 556 S.E.2d at 692; § 18-3-70. Such papers include the magistrate's "return," which is particularly necessary when there is no transcript available. *See* S.C. Code Ann. § 22-3-730 (2025) ("All proceedings before magistrates shall be summary . . . ."); S.C. Code Ann. § 18-3-40 (2014) (requiring the magistrate to file "the record, a statement of all the proceedings in the case, and the testimony taken at the trial" after receiving notice of appeal); S.C. Code Ann. § 18-3-60 (2014) (requiring the magistrate to "make a return to the appellate court of the testimony, proceedings[,] and judgment and file it in the appellate court"). Without a de novo standard of review and with the statutory constraints on the record, we do not see how the circuit court could have considered the recording in the first instance. Accordingly, we affirm the circuit court's refusal to consider the recording.

**TRIAL IN ABSENCE**

Hannon concedes he "receive[d] notice of his right to be present [at trial] and was warned his case would go forward in his absence." *See* Rule 16, SCRCrimP ("Except in [certain] cases . . . , a person . . . may voluntarily waive his right to be present [at trial] and may be tried in his absence upon a finding by the court that such person has *received notice* of his right to be present *and* that *a warning* was given that the trial would proceed in his absence upon a failure to attend court." (emphases added)). Hannon contends, however, that he did not *voluntarily* waive his right to be present. *See* Rule 16, SCRCrimP (permitting a voluntary waiver of one's right to be present). The only citation Hannon provides for this argument is to a dictionary definition of voluntary: "Voluntary is defined as done by design or intention. Black's Law Dictionary 764 (3rd pocket ed. 2006)."

This definition cuts against Hannon's argument. Based on the record before us, Hannon left the courthouse "by design or intention" despite the *conceded* notice of his right to be present and *conceded* warning that the case would go forward without him. *See, e.g.*, *State v. Boykin*, 324 S.C. 552, 556, 478 S.E.2d 689, 691 (Ct. App. 1996) ("Once a defendant has been warned that his misconduct will thereafter be treated as a waiver of his right to counsel, any subsequent misconduct is treated as a 'waiver by conduct.'" (citation omitted)).

Hannon contends that he objected to the trial going forward without him, but unless leaving counts as an objection, the record does not contain one. *See State v. Ravenell*, 387 S.C. 449, 456, 692 S.E.2d 554, 558 (Ct. App. 2010) ("In order to claim the protection afforded by the rule of law that a criminal defendant may be tried in his absence only upon a trial court's finding that the defendant has received the requisite notice of his right to be present and advisement that the trial would proceed in his absence if he failed to attend, a defendant or his attorney must object at the first opportunity to do so, and failure to so object constitutes waiver of the issue on appeal."); *see also id.* ("The deliberate absence of a defendant who knows that he stands accused in a criminal case and that his trial will begin during a specific period of time indicates nothing less than an intention to obstruct the orderly processes of justice." (quoting *Ellis v. State*, 267 S.C. 257, 261, 227 S.E.2d 304, 306 (1976))).

With no citation to law, Hannon also contends the magistrate should have offered an alternative to the face mask. This argument could be deemed abandoned. *See State v. Jones*, 344 S.C. 48, 58–59, 543 S.E.2d 541, 546 (2001) (explaining a short, conclusory argument with no supporting authority is deemed abandoned on appeal). Nevertheless, according to the record, a face shield was offered as an alternative but Hannon refused it. There is no evidence in the record to dispute this.

Hannon last argues that failure to comply with the supreme court's mask mandate does not equate to a waiver of one's right to appear at trial. It is true that the supreme court's order only referenced "contempt" for noncompliance, and this may have been an appropriate remedy had Hannon not left the courthouse and waived his right to be present. But, as explained above, Hannon waived the right to attend his trial by leaving the courthouse, and thus, we affirm the determination that a trial in Hannon's absence was proper.

**WAIVER OF RIGHT TO JURY TRIAL**

There is no dispute that Hannon requested a jury trial on his initial trial date. *See* S.C. Code Ann. § 22-2-150 (2025) ("Every person arrested and brought before a magistrate charged with an offense within his jurisdiction shall be entitled on demand to trial by jury which shall be selected as provided in this chapter."). The question before this court is whether Hannon waived this previously asserted right. Hannon contends that the limited exchange he had with the magistrate did not rise to the level of the colloquy necessary to ensure Hannon understood the implications of waiving his right to a jury trial. In other words, he argues that the waiver was not made knowingly.

We find the exchange between the magistrate and Hannon sufficient for the magistrate to have concluded Hannon waived his right to a jury trial. *See Moore v. State*, 399 S.C. 641, 648, 732 S.E.2d 871, 874 (2012) ("The validity of a defendant's waiver . . . turn[s] on . . . the presence of a record supporting the validity of that waiver."). First, it was clear Hannon was aware of his right to a jury trial. After all, he previously requested a jury trial. *See Boykin*, 324 S.C. at 556, 478 S.E.2d at 690 ("A waiver is an intentional and voluntary relinquishment of a *known* right." (emphasis added)). Second, the return indicates the magistrate could not have been more clear as to what the consequences would be if Hannon did not comply with the mask mandate and the trial proceeded without him; the magistrate told Hannon that he would be found guilty and fined, but given no jail time.[1] *Cf. Moore*, 399 S.C. at 648–49, 732 S.E.2d at 874–75 (reviewing a PCR case for ineffective assistance of counsel on the issue of whether a jury trial waiver was knowingly made and, in finding the waiver was not supported by a complete record, highlighting the fact that "there was *no* colloquy between the court and Petitioner's trial counsel or Petitioner regarding the waiver"); *see also, e.g.*, *Roddy v. State*, 339 S.C. 29, 34, 528 S.E.2d 418, 421 (2000) (discussing the issue of a knowing and voluntary guilty plea and stating a defendant "must have a *full understanding of the consequences* of the plea" (emphasis added)).

Third, Hannon clearly understood these consequences because, according to the return, after confirming there would not likely be a jail sentence, Hannon stated "[w]ell if I'm not going to jail I don't need no d[***] jury trial" and left the courthouse. *See Boykin*, 324 S.C. at 556, 478 S.E.2d at 690 ("A waiver is an *intentional and voluntary relinquishment* of a known right." (emphasis added)); *see also, e.g.*, *Roddy*, 339 S.C. at 34, 528 S.E.2d at 421 (discussing the issue of a

---

[1] We are sensitive to the fact that this statement was made prior to any trial occurring. Still, it is difficult to imagine a stronger warning about the consequences of the case proceeding without Hannon.

knowing and voluntary guilty plea and stating a defendant "must have a full understanding of the consequences of the plea"); *Boykin*, 324 S.C. at 556, 478 S.E.2d at 690 (discussing the issue of waiver of right to counsel and stating "[t]he defendant must be informed on the record of the dangers and disadvantages of self-representation, or the record must indicate the defendant had sufficient background to understand the disadvantages of self-representation before he waives his right to counsel"); *Osbey v. State*, 425 S.C. 615, 620, 825 S.E.2d 48, 50 (2019) ("For a waiver to be 'knowing and intelligent,' the defendant 'should be made aware of the dangers and disadvantages of self-representation.'" (citation omitted)).

Hannon contends this case is similar to *State v. Dial*, where our supreme court found the magistrate's return was insufficient to demonstrate a knowing and voluntary waiver of the pro se defendant's right to counsel and remanded the case for an evidentiary hearing on waiver. 429 S.C. 128, 134–36, 838 S.E.2d 501, 504–05 (2020). We fully accept *Dial* but find this case meaningfully distinguishable. Here, the record demonstrates that Hannon was aware of his trial date, knew of his right to a jury trial, knew that the trial would proceed in his absence, was advised of the likely outcome, and still chose to leave the courthouse.

For these reasons, we affirm the finding that Hannon waived his right to a jury trial.

**AFFIRMED.**[2]

**THOMAS, HEWITT, and CURTIS, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.